DWG, INC., d/b/a Samuel Gordon & Company, Appellee,

v.

Billy PELTIER and Grant Square Bank and Trust Company, Appellants.

No. 49706.

Supreme Court of Oklahoma.

April 19, 1977.

Don Porter, Porter & Quick, Oklahoma
City, for appellee.

Marvin B. York, Blevins & York, Oklahoma City, for appellants.

DAVISON, Justice:

This case involves an appeal from a judgment rendered in the District Court in which the court determined priorities between two creditors claiming to have perfected security interests in the same collateral. Appellee, DWG, Inc., d/b/a Samuel Gordon & Company, jewelers, brought an action against appellant, Grant Square Bank and Trust Company, for wrongful retention of collateral in which Gordon Jewelers claim to have priority. The collateral involved consisted of three items of jewelry:

1. Gentlemen's diamond ring

2. Ladies' watch

3. Two rings, referred to as a bridal set.

The trial court held that there was insufficient evidence to establish that the gentlemen's ring held by the Bank was the same ring secured by Gordon Jewelers, and consequently held that the Bank was entitled to possession of the gentlemen's ring. The court's finding with regard to the gentlemen's ring has not been appealed by Gordon Jewelers and is therefore not before us.

The court also held that Gordon Jewelers, by virtue of their perfected security interest, had a right to the possession of the ladies' watch and the ladies' bridal set. The major issue presented to the court in determining the validity of Gordon's security interest in the ladies' watch and bridal set, was whether the descriptions of the collateral in the security agreements and the financing statements involved were adequate. The court held that they were. The description of the ladies' watch on the financing statement filed by Gordon Jewelers described the collateral as, "Gordon watch M7325." The description of the collateral in the finance agreement itself read, "1–C/13–M7325–Gordon Watch."

[1] Unless specific special provisions of the Uniform Commercial Code are applicable, or a secured party maintains possession of the collateral, a creditor, in order to obtain a *perfected* security interest in collateral, among other things, must describe the collateral in both a security agreement and in a financing statement.[1]

Title 12A O.S.1971 § 9–110, which deals with the sufficiency of a description of collateral provides:

"For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it *reasonably identifies what is described*." [Emphasis added.]

■ Both the financing statement and the security agreement dealing with the watch in question clearly indicate that appellee Gordon has a security interest in a Gordon watch. We think such language reasonably identifies the collateral, and therefore meets the requirement of the above quoted statutory provision. In so holding, we note that the description in both documents not only indicates that there is a security interest in a watch, but also identified the watch by brand, and by model number.[2] The evidence presented clearly demonstrates that all other requisites for perfecting a security interest were present. Thus, we hold that Gordon Jewelers had a perfected security interest in the ladies' watch, and because the Bank never had any security interest in the watch, we hold that Gordon Jewelers is, as the trial court held, entitled to possession of the watch, or its market value, since the Bank, being an unsecured creditor with respect to the watch, had no claim to that specific collateral.

■ We next consider the description of the two ring bridal set contained in Gordon's security agreement and financing statement. The security agreement itself described the collateral as, "ladies' bridal set white gold." The financing statement, however, described the collateral as, "1 ladies' *bracelet set*—white gold."[3] There can be little doubt that Gordon Jewelers did not have a *perfected* security interest in the bridal set, for the description of the collateral on the financing statement did not reasonably identify the collateral, for the

---

**1.** 12A O.S.1971 § 9–203(1)(b) provides that a signed security agreement must contain a description of the collateral.
12A O.S.1971 § 9–402(1) provides that for a financing statement to be sufficient, it must contain, " * * * a statement indicating the types, or describing the items, of collateral."

**2.** "M7325" was identified by plaintiff's witness, Norman Gordon, as a model number. Although we are cognizant of the fact that the series of letters and numbers would have no meaning to a third party, such description is nevertheless helpful in identifying the collateral, once an inquirer learns that the letters and numbers represent a model number.

**3.** Although a witness reading from the financing statement indicated that bracelet was spelled b-r-a-c-k-l-e-t, the document clearly indicates that bracelet was spelled "bracelet." [Emphasis added].

two ring bridal set could not reasonably be described or referred to as a *bracelet* set. This being the case, third parties checking the files would not be put on notice that Gordon Jewelers had a security interest in a two ring *bridal* set. Because of the mistaken description in the financing statement, we hold that Gordon Jewelers did not have a *perfected* security interest in the bridal set. This, however, does not mean that Gordon Jewelers did not have a security interest in the bridal set. The description contained in the security agreement itself, as mentioned above, described the collateral as a ladies' bridal set—white gold. This description did reasonably describe the collateral, and thus did not invalidate the security agreement. Accordingly, we hold that Gordon Jewelers had a security interest in the two ring bridal set, although it was *not* a perfected security interest.

Since the Bank had a perfected security interest in the bridal set, they have a right to possession, and no fact in the record indicates that their possession of the bridal set was wrongful. Because of this, we hold that the trial court erred when it held that Gordon Jewelers had a right to possession and/or the market value of the bridal set.

In holding that the Bank had a right to possess the two ring bridal set, we do not suggest that such a possessory right was absolute. On the contrary, if the Bank wishes to retain the collateral in satisfaction of the debtor's obligation, the Bank must comply with the provision of 12A O.S. 1971 § 9–505(2), which requires notice to be given to (1) the debtor, (2) to other secured parties who have a security interest in the collateral and who have duly filed a financing statement in this State, and (3) to secured parties with security interests in the collateral known by the Bank to have a security interest in the rings, which would include Gordon Jewelers. Gordon could then make an appropriate objection, if desired, and ask that the collateral be sold. On the other hand, if the Bank wishes to sell or otherwise dispose of the collateral, it must comply with the provision of 12A O.S. 1971 § 9–504.

Lastly, we consider an argument raised by appellee Gordon, in which Gordon asserts that the result in this case might differ because a "consumer credit sale" is involved. In considering this issue, we simply note that the record clearly indicates that the items of jewelry were purchased for business use, and consequently, the sale could not constitute a "consumer credit sale" as defined at 14A O.S.1971 § 2–104(1).[4]

For the above stated reasons, the decision of the trial court insofar as it held that Gordon Jewelers was entitled to possession of the ladies' bracelet set, or its market value, is reversed and we hold that appellant Bank was entitled to possession, as described above, and we sustain the trial court's action insofar as it held that Gordon Jewelers was entitled to possession of the ladies' Gordon watch, or entitled to its market value.

DECISION OF THE TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART.

LAVENDER, V. C. J., and IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

---

4. 14A O.S.1971 § 2–104(1) provides:

"Except as provided in subsection (2), 'consumer credit sale' is a sale of goods, services, or an interest in land in which
   (a) credit is granted by a person who regularly engages as a seller in credit transactions of the same kind;
   (b) the buyer is a person other than an organization;
   (c) the goods, services, or interest in land are *purchased primarily for a personal, family, household, or agricultural purpose;*
   (d) either the debt is payable in installments or a credit service charge is made; and
   (e) with respect to a sale of goods or services, the amount financed does not exceed Twenty-five Thousand Dollars ($25,000.00)."
[Emphasis added]